PUBLIC VERSION

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **FINTIV, INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**APPLE INC.,**<br><br>**Defendant.** | §<br>§  **Civil Action No.: 1:21-cv-00896-ADA**<br>§<br>§<br>§  **JURY TRIAL DEMANDED**<br>§<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFF FINTIV, INC.'S EMERGENCY MOTION FOR
REOPENING OF DISCOVERY, TRIAL CONTINUANCE, AND SANCTIONS**

Plaintiff Fintiv, Inc. ("Fintiv" or "Plaintiff")—having learned within the past two weeks of critical new evidence suppressed by Defendant Apple Inc. ("Apple" or "Defendant") in blatant violation of its discovery obligations—respectfully moves to reopen discovery for the limited purpose of addressing this new evidence, to continue the June 21, 2022 trial to allow such discovery to be completed, and for monetary sanctions.

The newly discovered facts—evidenced by a sworn declaration and documentary evidence—demonstrate that SK C&C d/b/a CorFire ("CorFire"), from which Fintiv acquired the Patent-in Suit, shared key aspects of its patented mobile wallet technology during at least five in-person meetings with Apple in 2011 and 2012—three years before Apple launched its infringing Apple Pay—and that Apple thereafter hired CorFire employees who attended the meetings and even put one in charge of its Apple Pay and Apple Wallet Management program.  During discovery, Apple not only wrongfully suppressed these facts—which go directly to Apple's willfulness in infringing the Patent-in Suit —but also falsely represented to Fintiv and this Court that no such meetings had occurred.

Given the urgency of this Motion, Fintiv respectfully requests that the Court order expedited briefing with Apple's response due by Wednesday, June 8, 2022. Fintiv waives its right to a reply and respectfully requests a hearing on or before Friday, June 10, 2022, if possible.

## I. PROCEDURAL HISTORY & FACTUAL BACKGROUND

On July 14, 2020, Fintiv moved for leave to file a third amended complaint seeking relief for claims including Apple's willful infringement relating to pre-suit communications that Fintiv discovered—and that Apple had failed to disclose—during the course of discovery. Dkt. 139. This discovery revealed, among other things, that Apple failed to disclose that (1) in 2011 CorFire met with Apple to pitch and present its mobile wallet secure element technology to Apple's engineers and product managers and (2) Apple hired ████████████ CorFire's former m-Commerce Global Product & New Business Development Manager. *Id.* at 6-7. After considering the arguments by the parties, the Court ultimately decided that Fintiv had not shown "good cause" to add a claim for willful infringement. Importantly, the Court did not make a finding that the facts Fintiv sought to add were not credible or that Fintiv could not prove Apple had pre-suit knowledge of the Patent-in-Suit, including to support Fintiv's indirect infringement claims. Instead, the Court's ruling was based on the late addition of a new cause of action and the Court's opinion on Fintiv's ability to prove that specific cause of action, willful infringement, with such facts. Ex. 1,[1] 9/1/20 Tr. at 96:12-97:11.1.

Since the conclusion of the September 1, 2020 hearing on Fintiv's motion for leave, Fintiv continued diligently searching for evidence of third-party CorFire's meetings and pre-suit communications with Apple. After devoting numerous hours to this effort, with little success,

---

[1] "Ex. ___" refers to exhibits to the Declaration of Jonathan K. Waldrop ("Waldrop Decl."), filed contemporaneously herewith.

Fintiv finally uncovered several expense reimbursement reports ("T&E Reports") evidencing multiple meetings between CorFire and Apple in 2011 and 2012 – almost three years before Apple Pay launched in September 2014. Those meetings included: (1) a March 17, 2011 meeting between CorFire's ██████████████████████ and Apple's ██████████ ██████████ (2) a July 4, 2011 meeting between ██████████ and Apple's ██████████ (3) a July 25, 2011 meeting between ██████████ (4) an October 4, 2011 meeting between ██████████ and (5) a January 31, 2012 meeting between CorFire's ██████████ ██████████ and Apple at Apple's headquarters in Silicon Valley. Exs. 2-6.

Eubank, who at the time was CorFire's Vice President of Channel Sales, recalled the January 31, 2012 meeting at Apple's headquarters in Cupertino, California, and specifically recalled sharing CorFire's mobile wallet technology, including a presentation about key aspects of its patented technologies, in an effort to partner with Apple in launching a mobile wallet. Declaration of George Eubank ("Eubank Decl."), ¶ 6. Eubank specifically recalled making a presentation to Apple concerning CorFire's products and services, including CorPay (CorFire's mobile wallet technology) and its secure element chip and widget technologies for mobile wallets, and although he no longer has a copy of the specific written presentation shared with Apple, Fintiv was able to locate a presentation that Eubank confirmed was substantially similar to the one presented to Apple, a copy of which is attached to his Declaration submitted herewith. Eubank Decl., ¶ 7.

As evidenced in the newly discovered T&E Reports, CorFire's ██████████ attended all five in-person meetings with Apple in 2011 and 2012. Exs. 2-6. At the time, ██████████ CorFire's Senior Vice President, Europe & Merchant Accounts. Ex. 7. ██████ left CorFire in 2014, and since 2015, he has been Apple's Director of Apple Pay & Wallet Product Management. *Id.*

Throughout this litigation, Apple failed to disclose, in response to Fintiv's discovery requests, these highly relevant and material facts about its repeated communications with CorFire and its hiring of ▬▬ (among other former CorFire employees)—facts that were undisputably in Apple's possession.[2]  For example, on March 20, 2020, Fintiv served Interrogatory No. 15 requiring Apple to "[i]dentify the Date(s) when Apple became first aware of the Asserted Patent, the Related Patents, and the Related Patent Applications."  Ex. 9.  In its response, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Ex. 10.  In fact, however, the newly discovered evidence reveals that Apple learned of at least key aspects of the patented technology *years before* this lawsuit was filed.  Similarly, on June 22, 2020, Fintiv served Interrogatory No. 27 requesting that Apple "[d]escribe **Your communications with SK C&C and Your knowledge of SK C&C's intellectual property** (e.g., the Patent-in-Suit) prior to this Action, **including but not limited to**, when you first communicated with SK C&C's former employee Jason Miller, the circumstances surrounding Your hiring of Mr. Miller from SK C&C, why You decided to hire Mr. Miller, what Mr. Miller has worked on and continues to work on during his employment at Apple, and whether Mr. Miller had knowledge of SK C&C's intellectual property, including the Patent-in-Suit."  Ex. 11 (emphasis added). Apple's response to this interrogatory ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[2] The newly discovered evidence not only strongly supports Fintiv's willful infringement claim, but also refutes Apple's pending motion for judgment on the pleadings as to pre-suit indirect infringement and requires reconsideration of the Court's decision granting in part motion *in limine* no. 2 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬  Ex. 8, 9/24/21 Pretrial Conference Tr. at 51:1-10, 51:24-52:3, 52:18-24.

██████████████████████████████████████████████████████████████

██████████████████████████████████ Ex. 12. Apple's response ██████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ *Id.*

Apple's concealment was not limited to interrogatory responses, but included its document production as well. On March 23, 2020 and July 24, 2020, Fintiv served on Apple its second and third sets of Requests for Production of Documents, respectively, seeking: "All Documents referring to or **mentioning SK C&C**, its affiliates, related entities, and all other persons acting on its behalf;" "All Documents referring to or **mentioning Mozido Corfire – Korea**, Ltd., its affiliates, related entities, and all other persons acting on its behalf"; and "All Documents reflecting **Your communications with Fintiv and its predecessors, including but not limited to Mozido, Inc. and SK C&C**, prior to December 21, 2018, including for example those through Messrs. Parker, Nazir, and Ewing regarding the Patent-in-Suit, Related Patents, Related Patent Applications, Accused Technology, and/or Wallet Cards, and **Your knowledge of SK C&C's intellectual property** (*e.g.*, the Patent-in-Suit)…." Ex. 13, p. 9, Nos. 40-41 (emphasis added); Ex. 14, p. 9, No. 64 (emphasis added). Apple never produced a single document responsive to these Requests, and, given the new evidence, it strains credulity, to say the least, that no such documents exist.[3] In fact, to take just one example, Apple unquestionably has documents concerning its ████████████████ *the former CorFire employee who attended all five meetings between CorFire*

---

[3] At least one written presentation discussing CorFire's patented mobile wallet technology was shared at the January 31, 2012 meeting. Eubank Decl., ¶ 7.

*and Apple when CorFire's mobile wallet technology was discussed*—and who is now in charge of Apple Pay and Apple Wallet.

Apple served Initial Disclosures on November 14, 2019, and Supplemental Initial Disclosures on February 27, 2020, July 27, 2020, September 24, 2020, and June 23, 2021. Exs. 15-19. Despite supplementing its initial disclosures four times, Apple again failed to disclose as a person with knowledge ████████████████████████████████████████ Apple did disclose ██████ ██████████████████████████████████████████████ ████████████████████████████████████████ Ex. 19. Apple, however, failed to disclose that ██████ had attended the March 17, 2011, July 4, 2011, July 25, 2011, and October 4, 2011 meetings with CorFire on behalf of Apple, that ██████ has relevant information regarding these meetings, or even that the meetings ever occurred. Exs. 2-6.

## II.   ARGUMENT

### A.   The Trial Should be Continued to Allow for Reopening of Discovery

As shown above, the newly discovered evidence shows that during discovery Apple concealed the fact that it had five meetings with Fintiv's predecessor CorFire, obtained CorFire documents about the technology three years before Apple Pay launched with all the key functionalities described in the CorFire presentation, and even hired CorFire employees who had attended those meetings. Despite Fintiv's diligence (diligence this Court acknowledged at the September 1, 2020 hearing), Fintiv did not discover any of this evidence until very recently and was unable to produce the evidence in response to Apple's repeated discovery requests for information Apple itself already had concerning these matters – which plainly gave Apple the confidence to continue concealing them.

As a matter of fundamental fairness, and to prevent Apple from profiting from its repeated discovery violations, Apple should be ordered to produce all documents related to these matters, including but not limited to the newly discovered meetings, and to produce for deposition █████ and any other witnesses who have knowledge of the meetings. *See e.g.*, *Sw. Refrigerated Warehousing* 2017 WL 8777365, at *1; *Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810 (5th Cir. 1996); *Garcia*, 97 F.3d at 814.

The requested relief here is critical because Apple's concealment hamstrung Fintiv in obtaining highly relevant, if not dispositive, evidence concerning at least infringement, non-obviousness, credibility of witnesses, damages, and potentially willful infringement. The Apple-CorFire meetings, CorFire's presentation to Apple about key aspects of the patented technology, and the 2010 pending patent application describing that technology constitute powerful evidence of at least copying and willful infringement. *See, e.g.*, *KAIST IP US LLC v. Samsung Elecs. Co.*, 439 F. Supp. 3d 860, 884–85 (E.D. Tex. 2020) (upholding jury's finding of willful infringement based on presentations by inventor to infringer, infringer's knowledge that inventor had filed a patent application, and inventor's license offer to infringer prior to infringer's development of the accused product); *Liqwd, Inc. v. L'Oreal USA, Inc.*, 941 F.3d 1133, 1138-39 (Fed. Cir. 2019) (copying can be shown by having access to the invention and evidence of copying efforts, even without evidence that a specific patented product was copied); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) (plaintiff presented sufficient evidence at trial to prove willful infringement where, *inter alia*, infringer reviewed plaintiff's materials and attended its presentation of the software, which practiced the technology described in the asserted patent). This is particularly so given that Apple subsequently hired at least two CorFire employees ████████████, and suppressed the evidence of the five pre-launch Apple-

CorFire meetings during discovery. *See Avocent Huntsville, LLC v. ZPE Systems, Inc.*, 2018 WL 1411100, at *22 (N.D. Cal. 2018) (denying dismissal of willful infringement claim where accused infringer employed patentee's former employees); *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 4:14-CV-00371, 2017 WL 1716788, at *3 (E.D. Tex. Apr. 27, 2017) (defendants' material misrepresentations in their interrogatory responses and during trial regarding infringement and willfulness, and failure to produce relevant documents until trial, were sufficiently egregious to warrant enhanced damages).

Moreover, Rule 16(b) of the Federal Rules of Civil Procedure provides that a scheduling order may be modified "for good cause and with the judge's consent." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008) (internal quotation marks omitted). The factors guiding the "good cause" determination include: "(1) the party's explanation; (2) the importance of the requested relief; (3) potential prejudice in granting the relief; and (4) the availability of a continuance to cure such prejudice." *Green Hills Dev. Co. v. Credit Union Liquidity Servs., LLC*, 3:11-CV-1885-P, 2013 WL 12126783, at *2 (N.D. Tex. May 14, 2013); *see Sapp v. Mem'l Hermann Healthcare Sys.*, 406 Fed. Appx. 866, 869 (5th Cir. 2010) (*per curiam*) ("no single factor is dispositive, nor must all the factors be present"). A motion for continuance should be granted if a party discovers new information or the opposing side failed to produce documents. *See Sw. Refrigerated Warehousing Servs. Joint Venture v. M.A. & Sons, Inc.*, No. EP-16-CV-00421-DCG, 2017 WL 8777365, at *1 (W.D. Tex. Dec. 20, 2017) (granting motion for continuance where a party discovered new information and opposing party failed to turn over requested documents); *see also Advanced Display Systems, Inc. v. Kent State Univ.*, 212 F.3d 1272, 1284-86 (Fed. Cir. 2000) (applying Fifth Circuit law and reversing denial of new trial where a party "deliberately and intentionally withheld" key evidence pertaining to the issue of obviousness).

Here, the explanation for and importance of the requested relief are plain, and Apple should not be heard to assert any prejudice because the requested relief is necessitated by its own wrongful conduct and evidence suppression. In any event, there is no prejudice to Apple because granting the relief will not change the status quo of Apple's continuous infringement without paying Fintiv's reasonable royalty.

**B.     Fintiv Should be Granted Leave to Amend its Complaint to Allege Claims Uncovered During Discovery**

As discussed above, discovery related to meetings between the parties in which Fintiv or its predecessors discussed key aspects of CorFire's patented, innovative technology is relevant to numerous issues in this case, including the relationship between the parties, copying, indirect infringement, willful infringement, witness credibility, and trade secret misappropriation. Accordingly, Fintiv should be granted leave to amend its complaint to the extent discovery reveals any new claims. New information learned during discovery provides good cause to amend under Rule 16. *See, e.g.*, *H&R Block Tax Servs., Inc. v. Jackson Hewitt Tax Serv., Inc.*, No. 6:08CV37, 2008 WL 11265109, at *3 (E.D. Tex. Dec. 23, 2008) (granting motion for leave when plaintiff did not discover "significant details" until after the deadline); *Cornell Univ. v. Illumina, Inc.*, No. 10-433-LPS-MPT, 2016 WL 3046258, at *5 (D. Del. May 27, 2016) (finding good cause met where the party's new allegations were based on "a new set of facts obtained and confirmed during discovery which took place after the Scheduling Order's deadline for amending pleadings"); *Sprint Comms. Co., L.P. v. Time Warner Cable, Inc.*, No. 11–2686–JWL, 2013 WL 6589564, *2 (D. Kan. 2013) (granting patentee leave to amend to add a claim of willful infringement, even though leave was sought four months after the deadline to amend pleadings, where patentee showed that before the deadline the accused infringer had denied all pre-suit knowledge of the patent). Apple, at best,

negligently failed to discover and disclose this information earlier, and at worst, knowingly and willfully ignored its discovery obligations. *See, e.g., Pears v. Mobile County*, 645 F. Supp. 2d 1062, 1085-86 (S.D. Ala. 2009) (holding that where defendant carefully worded its discovery responses and pleadings to mislead plaintiff, the behavior constituted good cause to allow plaintiff to amend his pleadings after the amendment deadline). Indeed, a failure to grant Fintiv leave to amend would prevent Fintiv from presenting a full infringement case and would require Fintiv to go to trial on an incomplete record. *See LBS Innovations, LLC v. Aaron Bros., Inc.*, No. 2:11-CV-142, 2012 WL 12897919, at *2 (E.D. Tex. Nov. 9, 2012) (amendment should be allowed when "disallowing [it] would deprive Plaintiff of a plausible theory" for relief "and substantive review of the issues"). Here too, Apple should not be permitted to profit from failing to timely provide complete discovery of information in its possession.

### C.   Monetary Sanctions are Warranted

Based on the above conduct, Fintiv requests monetary sanctions against Apple to cover Fintiv's costs for: (1) preparing and filing this motion; (2) cancelling trial accommodations; (3) litigating motions now mooted or requiring reconsideration; and (4) any other costs the Court deems just. Fed. R. Civ. P. 37(c)(1)(A) (authorizing the court to order payment of the reasonable expenses and attorney's fees caused by the failure to disclose a witness).

### III.   CONCLUSION

For the foregoing reasons, Fintiv respectfully requests the Court reopen discovery for the limited purpose of obtaining documents and depositions from Apple about the 2011 and 2012 Apple-CorFire meetings, continue the currently-scheduled June 21, 2022 trial to a date two weeks after the completion of such discovery, allow Fintiv to supplement its pretrial disclosures, including witness and exhibits lists, as appropriate, and award monetary sanctions.

PUBLIC VERSION

Dated: June 6, 2022               RESPECTFULLY SUBMITTED,

By: */s/ Jonathan K. Waldrop*
    Jonathan K. Waldrop (CA Bar No. 297903)
    (Admitted in this District)
    jwaldrop@kasowitz.com
    Darcy L. Jones (CA Bar No. 309474)
    (Admitted in this District)
    djones@kasowitz.com
    Marcus A. Barber (CA Bar No. 307361)
    (Admitted in this District)
    mbarber@kasowitz.com
    John W. Downing (CA Bar No. 252850)
    (Admitted in this District)
    jdowning@kasowitz.com
    Heather S. Kim (CA Bar No. 277686)
    (Admitted in this District)
    hkim@kasowitz.com
    ThucMinh Nguyen (CA Bar No. 304382)
    (Admitted *pro hac vice*)
    tnguyen@kasowitz.com
    Chen Jia (CA Bar No. 281470)
    (Admitted in this District)
    cjia@kasowitz.com
    **KASOWITZ BENSON TORRES LLP**
    333 Twin Dolphin Drive, Suite 200
    Redwood Shores, California 94065
    Telephone: (650) 453-5170
    Facsimile: (650) 453-5171

    Paul G. Williams (GA Bar No. 764925)
    (Admitted in this District)
    pwilliams@kasowitz.com
    **KASOWITZ BENSON TORRES LLP**
    1230 Peachtree Street N.E., Suite 2445
    Atlanta, Georgia 30309
    Telephone: (404) 260-6080
    Facsimile: (404) 260-6081

    Marc E. Kasowitz (NY Bar No. 1309871
    (Admitted *pro hac vice*)
    mkasowitz@kasowitz.com
    Shelley Ivan (NY Bar No. 4338067)
    (Admitted *pro hac vice*)
    sivan@kasowitz.com
    **KASOWITZ BENSON TORRES LLP**
    1633 Broadway
    New York, NY 10019

PUBLIC VERSION

Telephone: (212) 506-1700
Facsimile: (212) 506-1800

George Philip Cowden (TX Bar No. 24071492)
george@cowdenlawfirm.com
**THE COWDEN LAW FIRM, PLLC**
110 N. College Ave., Suite 1010
Tyler, TX 75702
Telephone: (903) 201-3650
Facsimile: (903) 201-3651

Craig D. Cherry (TX Bar No. 24012419)
craig@swclaw.com
Justin W. Allen (TX Bar No. 24081977)
justin@swclaw.com
**STECKLER WAYNE CHERRY & LOVE PLLC**
8416 Old McGregor Rd.
Waco, Texas 76712
Telephone: (254) 651-3690
Facsimile: (254) 651-3689

Raymond W Mort, III (TX Bar No. 00791308)
raymort@austinlaw.com
**THE MORT LAW FIRM, PLLC**
100 Congress Ave, Suite 2000
Austin, TX 78701
Telephone: (512) 865-7950
Facsimile: (512) 865-7950
**Attorneys for Plaintiff
FINTIV, INC.**

PUBLIC VERSION

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing instrument was served or delivered electronically to all counsel of record via U.S. District Court [LIVE] — Document Filing System to all counsel of record on this 6th day of June, 2022.

*/s/ Jonathan K. Waldrop*
Jonathan K. Waldrop