IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| FINTIV, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>    Defendant. | Civil Action No. 1:21-cv-00896-ADA |

**APPLE'S OPPOSITION TO FINTIV'S EMERGENCY MOTION FOR REOPENING
DISCOVERY, TRIAL CONTINUANCE, AND SANCTIONS**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...........................................................................................................1

II. BACKGROUND .............................................................................................................1

    A. Fintiv Merely Rehashes Allegations About A 2011 CorFire-Apple Meeting Previously Argued In Its Unsuccessful Motion To Amend Its Complaint. ..............1

    B. Apple's Renewed Investigation Since The Filing Of This Motion Has Turned Up Nothing Of Note. ...................................................................................................2

III. LEGAL STANDARD......................................................................................................4

IV. ARGUMENT...................................................................................................................4

    A. None Of The "Newly Discovered Facts" In Fintiv's Motion Is Actually New.......4

        1. The "Newly Discovered Facts," Including Mr. Eubank's Identity And The CorFire Documents, Were In Fintiv's Possession Or Otherwise Available To Fintiv During Fact Discovery. ...............................................4

        2. Fintiv Does Not Explain How Or Why It Failed To Discover The "Newly Discovered Facts" Until Now. ..........................................................5

    B. None Of The "Newly Discovered Facts" Is Relevant To Any Claim Or Defense In This Case. .................................................................................................6

        1. The Alleged Events Of 2011 And 2012 Are Irrelevant To Willful Infringement, Indirect Infringement, And Alleged "Copying." ..................6

        2. Fintiv's References To The "2010 Pending Patent Application" Cannot Constitute Knowledge Of The Later-Issued Patent.........................8

        3. The November 2012 NDAs And Contemplated Meeting Between CorFire And Apple Also Are Legally Irrelevant. ......................................8

    C. Fintiv Is Not Entitled To Sanctions, Especially Because Delaying The Trial Has Significantly Prejudiced Apple. ..........................................................................9

WEST/298937137

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allergan, Inc. v. Teva Pharms. USA, Inc.*,
   No. 2:15-1455, 2017 WL 119633 (E.D. Tex. Jan. 12, 2017) ...................................................... 4

*Cohesive Techs., Inc. v. Waters Corp.*,
   543 F.3d 1351 (Fed. Cir. 2008) ................................................................................................ 8

*Commil USA, LLC v. Cisco Sys.*,
   575 U.S. 632 (2015) .................................................................................................................. 7

*Jamieson ex rel. Jamieson v. Shaw*,
   772 F.2d 1205 (5th Cir. 1985) .................................................................................................. 4

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
   941 F.3d 1133 (Fed. Cir. 2019) ................................................................................................ 8

*Parity Networks, LLC v. Cisco Sys., Inc.*,
   No. 6:19-cv-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019) ........................... 6, 7

*S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*,
   315 F.3d 533 (5th Cir. 2003) ......................................................................................... 4, 5, 6, 9

*State Indus., Inc. v. A.O. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985) ............................................................................................ 7, 8

**Other Authorities**

Fed. R. Civ. P. 16(b)(4) .................................................................................................................. 4

Fed. R. Evid. 401 ........................................................................................................................... 8

Rule 37(c)(1)(A) ............................................................................................................................ 9

**I.     INTRODUCTION**

In a transparent attempt to derail the trial, Fintiv Inc. ("Fintiv") relies on "newly discovered facts" that are not new and are irrelevant to this case. All the information Fintiv supposedly discovered just before trial has been in its possession all along. Indeed, Fintiv omits from its motion the fact that Fintiv (then called Mozido) acquired the assets of the prior owner of the '125 patent, CorFire, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, four years before filing this lawsuit. *See* Ex. A at 3, 18-19 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). Moreover, these "new" facts about meetings that allegedly happened years before the '125 patent issued are legally irrelevant. Because the alleged communications occurred <u>before</u> the '125 patent issued, as a matter of law they cannot constitute "knowledge" of the patent.

Throughout this case, Apple has been diligent in investigating the irrelevant issues raised in Fintiv's motion. Fintiv, however, failed to disclose until 17 months after the close of fact discovery a witness that Fintiv should have known about all along—CorFire Vice President George Eubank—and the exhibits it attaches to its motion. In response to Fintiv's motion, Apple has spent the past two weeks interviewing Apple witnesses and combing through documents, including emails, which the parties agreed and the Court ordered would not be searched or produced in this case. *See* ECF No. 39 at 2. Apple's investigation has confirmed that Apple was aware of CorFire in 2011 and Mozido in 2015, but Apple was not aware of the '125 patent until this case was filed. Thus, as the Court correctly held in denying Fintiv's prior motion to add a willful infringement claim (ECF No. 203 at 96:15-97:2), even accepting Fintiv's allegations as true, Fintiv's motion based on pre-issuance communications remains futile and should be denied.

**II.    BACKGROUND**

    **A.    Fintiv Merely Rehashes Allegations About A 2011 CorFire-Apple Meeting Previously Argued In Its Unsuccessful Motion To Amend Its Complaint.**

1

This is the third time the Court will be addressing Fintiv's allegations about contacts between CorFire and Apple years before the '125 patent issued.  In July 2020, Fintiv moved for leave to file a third amended complaint to add a claim of willful infringement.  ECF No. 139-1 at 1.  In that motion, Fintiv claimed that "[i]n 2011 … SK C&C met with several Apple engineers and product managers to pitch a mobile wallet solution to Apple.  During this 2011 meeting, SK C&C presented the patented secure element technology to Apple's engineers and product managers."  *Id.* at 6.  Apple opposed Fintiv's motion to amend because (among other things) none of Fintiv's new allegations, even if true, established pre-suit notice of the '125 patent, which did not issue until 2014.  ECF No. 150-2 at 4.  The Court denied Fintiv's motion to amend, holding "there is not good cause to allow the amendment to add willfulness."  ECF No. 203 at 96:15-21.  The Court further stated: "I have a very strong feeling [that the proposed amendment] … will be futile."  *Id.* at 96:22-97:2; *see also* ECF No. 259 (Hrg. Tr.) at 4-35.

Now—nearly two years later and just days before trial—Fintiv again cites these same alleged and irrelevant meetings, inexplicably claiming to have just discovered information that has been in Fintiv's possession all along.  Fintiv offers no reason why it did not previously disclose Mr. Eubank, a former CorFire officer, or any of the exhibits attached to its motion during fact discovery.  And all of this information is just as legally irrelevant as the nearly identical facts upon which Fintiv relied in its prior motion that the Court found "futile."

**B.    Apple's Renewed Investigation Since The Filing Of This Motion Has Turned Up Nothing Of Note.**

Since Fintiv filed this motion on June 6, Apple has interviewed and/or re-interviewed various Apple employees who might have knowledge of potential CorFire-Apple meetings in 2011 and 2012, and has searched through records to try to find evidence of these alleged meetings.  Apple can report the following:

2

- Apple has confirmed (again) that no one at Apple ever saw or was aware of the '125 patent (or the application leading to that patent) at any time before this lawsuit was filed. Mr. Eubank's declaration does not claim CorFire showed Apple any patents, and the presentation he attaches to his declaration as Exhibit C: (a) was not shown to Apple, but rather was prepared for ▮▮▮▮▮▮▮▮; (b) post-dates the alleged January 2012 meeting by eight months; (c) contains one passing reference to CorFire having a "▮▮▮▮▮▮▮▮▮▮▮▮▮▮" on slide 30 (which could not have included the '125 patent, because it did not issue until 2014); and (d) appears to have been presented by ▮▮▮▮▮▮▮▮ (see slide 33), not Mr. Eubank.

- Apple cannot find any record that the January 2012 meeting to which Mr. Eubank attests (Eubank Decl. ¶ 6) actually happened. No one at Apple recalls attending any such meeting. Former Apple employee Mr. Caillon, however, remembers a marketing meeting among Apple, Incomm, and CorFire in this timeframe related to Apple gift cards, which may be the meeting to which Mr. Eubank refers. If so, that meeting had nothing to do with Apple Pay.

- Apple has found references to a proposed meeting in November 2012 between CorFire and Apple. Apple has not been able to confirm that this proposed meeting happened or, if it did, that there was any follow-up after November 2012 between CorFire and Apple. Neither Mr. Eubank nor the other two CorFire employees identified in his declaration appear to have been involved in this meeting, if it happened. If the meeting did happen, it would have occurred two years before the '125 patent issued, so it cannot be evidence of knowledge of the patent.

- Apple has also found two NDAs, both signed in November 2012 by Jun Hong, the CTO of SK C&C USA Inc. and Charlie Buchbinder, who left Apple in 2013.

- Apple also located: (a) two public CorFire presentations dated September 2012 and November 2013, both of which predate the '125 patent; and (b) an internal Apple presentation from 2015 that refers to public information about Mozido and several other companies. None of these presentations refers to patents, intellectual property, or any proprietary technical information of CorFire or Mozido, so none of them could even arguably constitute knowledge of the '125 patent.

- The expense reimbursement receipts Mr. Waldrop attaches as Exhibits 2-5 to his declaration are all for late-night or holiday dinners in 2011 between then-CorFire employee Pascal Caillon and Apple employee Ben Vigier (3/17/11 9:30 p.m. dinner at a Korean restaurant; 7/4/11 holiday dinner; 7/25/11 dinner at an Indian restaurant; 10/11/11 8:00 p.m. dinner at a San Francisco restaurant). Apple understands that Mr. Caillon (who left Apple in February 2022) and Mr. Vigier are longtime personal friends who, among other things, vacation together, and there is no evidence that any proprietary CorFire information was discussed during any of these "meetings." Regardless, these social contacts cannot constitute knowledge of the '125 patent, which would not issue for another three years.

3

WEST/298937137

As demonstrated below, none of these communications is relevant to any claim or defense. All of them occurred before the '125 patent issued, so as a matter of law they cannot constitute "knowledge" of the patent.

### III. LEGAL STANDARD

To amend its pleadings or reopen discovery, Fintiv must demonstrate good cause. *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003); Fed. R. Civ. P. 16(b)(4). Courts assess four factors when evaluating good cause: "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." *S&W Enters*, 315 F.3d at 536. Most important is whether "despite its diligence [the movant] could not reasonably have met the scheduling deadline." *Allergan, Inc. v. Teva Pharms. USA, Inc.*, No. 2:15-1455, 2017 WL 119633, at *3 (E.D. Tex. Jan. 12, 2017). "[U]ndue prejudice to the opposing party[] and the futility of the amendment" may justify denial of leave to amend. *Jamieson ex rel. Jamieson v. Shaw,* 772 F.2d 1205, 1208 (5th Cir. 1985).

### IV. ARGUMENT

#### A. None Of The "Newly Discovered Facts" In Fintiv's Motion Is Actually New.

##### 1. The "Newly Discovered Facts," Including Mr. Eubank's Identity And The CorFire Documents, Were In Fintiv's Possession Or Otherwise Available To Fintiv During Fact Discovery.

Fintiv's alleged surprise at learning about purported Apple-CorFire meetings in 2011-2012 is feigned. Fintiv previously sought leave to file a third amended complaint (ECF No. 139-1) with a new claim for willful infringement. In that motion, Fintiv alleged:

> <u>In 2011</u>, after SK C&C had filed its provisional applications for the '125 Patent, SK C&C met with several Apple engineers and product managers to pitch a mobile wallet solution to Apple. During this 2011 meeting, <u>SK C&C presented the patented secure element technology to Apple's engineers and product managers</u>.

4

ECF No. 139-1 at 6 (emphasis added). Paragraph 21 of Fintiv's proposed third amended complaint, which the Court denied leave to file, made the same allegation:

> 21. In 2011, after SK C&C had filed its provisional applications for the '125 Patent, SK C&C met with several Apple engineers and product managers to pitch a mobile wallet solution to Apple. During this 2011 meeting, SK C&C presented the patented secure element technology to Apple's engineers and product managers.

ECF No. 139-11, ¶ 21. There is thus nothing new to Fintiv's belated contention that Apple and CorFire allegedly held meetings at which CorFire technology (but not patents) was presented.

Furthermore, all of the information Fintiv supposedly discovered just days before trial has been in its possession all along. *See* Ex. A at 3, 18-19 (SK C&C ▓▓▓▓ to Mozido). This includes (a) the identity of George Eubank, a Vice President of CorFire whom Fintiv never disclosed as a witness, and (b) the documents attached as Eubank Exhibits A, B and C and Waldrop Exhibits 2, 3, 4, 5, 6, and 7, none of which Fintiv produced during discovery. All of these exhibits are CorFire documents acquired by Mozido (now Fintiv). Indeed, Mr. Eubank admits the presentation he attaches to his declaration (Exhibit C) is <u>not</u> the one allegedly shown to Apple in January 2012. Eubank Decl. ¶ 7.

### 2. Fintiv Does Not Explain How Or Why It Failed To Discover The "Newly Discovered Facts" Until Now.

Fintiv offers no "explanation for the failure to timely move for leave to amend." *S&W Enters*, 315 F.3d at 536. Fintiv also does not explain when and how it located Mr. Eubank or the exhibits attached to its motion, let alone why this witness and these documents could not have been disclosed months ago. Fintiv instead vaguely asserts that "since the conclusion of the September 1, 2020 hearing on Fintiv's motion for leave, Fintiv continued diligently searching for evidence of third-party CorFire's meetings and pre-suit communications with Apple." Mot. at 2.

5

But CorFire is not a "third party." On the contrary, Fintiv (then Mozido) acquired CorFire's assets, including its "▮▮▮▮▮▮▮▮▮▮," in 2014. *See* Ex. A at 3, 18-19. Furthermore, several of Fintiv's exhibits are marked with "FvA" document control numbers, with "FvA" being a likely reference to this lawsuit. Fintiv never explains: (a) why it did not disclose Mr. Eubank, a former Vice President of Fintiv's acquired company, during fact discovery; (b) when and how Mr. Eubank came to light as a potential witness; (c) where and how Fintiv located the exhibits submitted with its motion; (d) when and how Fintiv's outside lawyers obtained them; (e) who added the "FvA" document control numbers and when; and (f) why Fintiv was incapable of finding this information years ago during fact discovery. Fintiv's silence is telling.

**B.      None Of The "Newly Discovered Facts" Is Relevant To Any Claim Or Defense In This Case.**

**1.      The Alleged Events Of 2011 And 2012 Are Irrelevant To Willful Infringement, Indirect Infringement, And Alleged "Copying."**

None of Fintiv's "new" information is relevant to any issue to be decided in this case, so Fintiv cannot demonstrate "the importance of the amendment" under the good cause standard. *S&W Enters*, 315 F.3d at 536. The alleged 2011-2012 events occurred years before the '125 patent issued in September 2014. Pre-patent-issuance events are irrelevant to whether Apple had knowledge of the asserted patent and are therefore irrelevant to (1) willful infringement (which is not in the case), (2) indirect infringement, and (3) alleged "copying."

The "newly discovered facts" are irrelevant to willful infringement. To state a claim for willful infringement, "a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) <u>knew of the patent-in-suit</u>; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-cv-00207-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019) (emphasis added).

Settled Federal Circuit precedent holds that "[t]o willfully infringe a patent, <u>the patent must exist</u> and one must have knowledge of it." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (emphasis added). Indeed, at the hearing on the motion to amend in September 2020, Fintiv did not even mention the alleged 2011 meeting that was set forth in its moving papers, presumably recognizing that pre-patent events cannot support a claim of willful infringement. And the Court properly denied Fintiv leave to amend its complaint, finding that Fintiv's willful infringement claim would be "futile." That is just as true today.

Fintiv repeatedly claims that the alleged 2011 and 2012 events relate to the "patented technology," but the '125 patent did not exist until 2014—years later. And Fintiv does not even attempt to compare any alleged disclosure by CorFire to the asserted patent claims. Thus, nothing about those events could possibly be relevant to willful infringement.

The "newly discovery facts" are irrelevant to indirect infringement. Fintiv's "newly discovered facts" of 2011 and 2012 cannot legally support a claim of indirect infringement either. To prove induced infringement, Fintiv must prove that Apple (a) knew of the asserted patent, and (b) knew that the actions it allegedly induced in its customers constituted infringement of the asserted patent. *See Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632, 639 (2015); *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019). To prove contributory infringement, Fintiv must prove Apple's "<u>knowledge of the patent in suit</u> and knowledge of patent infringement," among other things. *Commil*, 575 U.S. at 639 (emphasis added). Thus, Fintiv must prove facts showing both pre-suit knowledge of the patent and of infringement. The alleged 2011 and 2012 meetings between CorFire and Apple do neither of those things.

The "newly discovery facts" are irrelevant to alleged copying. Finally, Fintiv's assertion

7

that these events are supposedly "powerful evidence of … copying" (Mot. at 7) is wrong for at least two reasons.  First, one cannot copy what does not exist, and the '125 patent did not exist until September 2014.  *See Liqwd, Inc. v. L'Oreal USA, Inc.*, 941 F.3d 1133, 1138 (Fed. Cir. 2019) (analyzing evidence of copying by examining similarities between accused product and issued patent).  Second, copying is legally irrelevant because Apple will not assert an obviousness defense at trial, so secondary considerations of nonobviousness, including copying, will be inadmissible.  Apple will instead prove invalidity of the '125 patent based on version 2 of the VivoTech system, which is anticipatory prior art.  Apple will not offer any evidence of obviousness, which means secondary considerations of nonobviousness are inadmissible.  *See Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1363 (Fed. Cir. 2008) ("Obviousness requires analysis of secondary considerations of nonobviousness, while secondary considerations are not an element of a claim of anticipation."); Fed. R. Evid. 401.

        **2.**        **Fintiv's References To The "2010 Pending Patent Application" Cannot Constitute Knowledge Of The Later-Issued Patent.**

Fintiv never claims Apple knew about the '125 patent after it issued in 2014, but instead refers to "the 2010 pending patent application describing [the CorFire] technology" that existed at the time of these alleged 2011-2012 meetings.  Mot. at 7.  But a "pending patent application" is irrelevant to infringement, willful infringement, indirect infringement, and copying.  *See State Indus.*, 751 F.2d at 1236 ("A 'patent pending' notice gives one no knowledge whatsoever.").  Moreover, Fintiv has no evidence, nor even an allegation, that anyone at Apple ever saw the "2010 pending patent application."  That was true when the Court denied the motion to amend in September 2020 and remains true today.

        **3.**        **The November 2012 NDAs And Contemplated Meeting Between CorFire And Apple Also Are Legally Irrelevant.**

As described above, Apple's further investigation has revealed there was a proposed

8

meeting between CorFire and Apple in November 2012, before which the parties signed two forms of NDA. Apple has not been able to confirm the meeting ever occurred, nor can Apple find any evidence that either company followed up after the meeting. Although Apple stands ready to produce the documents relating to this potential meeting, they are no more relevant than any of the information cited in Fintiv's motion, since they predate the '125 patent by two years.

### C. Fintiv Is Not Entitled To Sanctions, Especially Because Delaying The Trial Has Significantly Prejudiced Apple.

Delaying the trial has significantly prejudiced Apple, which was ready to proceed on the scheduled date. *S&W Enters*, 315 F.3d at 536 (courts must assess "potential prejudice in allowing the amendment"). Importantly, Apple had secured the voluntary attendance of three critical third-party witnesses, (1) VivoTech prior art inventor Mohammad Khan, (2) NXP engineer Paul Fruhauf, and (3) former Apple Pay server-side engineer Chris Sharp, who recently left Apple. Hotels were booked, flights were scheduled, and war room space was coordinated. Cancelling all of this at the last minute cost money, and it is now unclear whether Apple's witnesses, including the third-party witnesses who will travel long distances to attend trial, will be willing and able to attend any new trial setting. This is the very definition of prejudice.

On the other hand, Fintiv cannot meet the standard for sanctions under Rule 37(c)(1)(A). Fintiv appears to base its request on "the failure to disclose a witness" (Mot. at 10, presumably referring to Mr. Eubank), but that failure cannot fall on Apple, because Mr. Eubank was a Vice President of Fintiv's acquired company CorFire, and Fintiv never disclosed him as a witness or produced any documents with his name on them. And furthermore, the additional information Apple has learned came from searches of emails, which the parties agreed would not be searched or produced in this case. ECF No. 39 at 2 ("the Court will not require general search and production of email or other electronically stored information (ESI) …"). So it is simply not the

9

case that Apple "suppressed" the evidence of these alleged meetings, as Fintiv claims (Mot. at 7)—on the contrary, neither side searched or produced email or other ESI in this case.

Fintiv also raises the alleged failure to disclose Mr. Vigier, Mr. Caillon, and Javier Warra as potential witnesses. Mot. at 3-5. Javier Warra never worked at Apple; he was apparently a personal friend of Pascal Caillon who joined a dinner. Mr. Vigier worked in Apple's Retail group (not the Apple Pay group) in 2011 and 2012, so he would not have come to Apple's attention in a lawsuit about Apple Pay. Apple disclosed Mr. Vigier as a prior art witness based on a patent he developed at another company, M-Foundry, but Fintiv moved to exclude him as a trial witness and never took his deposition. ECF No. 406 at 76-79. Mr. Caillon—who contrary to Fintiv's claim was never "in charge of Apple Pay and Apple Wallet" (Mot. at 5-6)—did not join Apple until August 2015, <u>after</u> Apple Pay was developed and released. His name appears on only three irrelevant documents in Fintiv's document production, and Apple was not previously aware that he communicated with Apple personnel when he worked at CorFire.

Regarding Apple's Response to Interrogatory No. 27 (*see* Mot. at 4-5), that interrogatory calls for Apple's "communications with SK C&C and [Apple's] knowledge of SK C&C's intellectual property (e.g., the Patent-in-Suit) prior to this Action … ." Nothing about the "new" Fintiv documents changes that response with respect to Apple's "knowledge of SK C&C's intellectual property"—it is still true Apple did not know about SK C&C intellectual property, including the '125 patent, before this lawsuit began. As for "communications with "SK C&C," Apple is prepared to produce the communications it has located (and requests that Fintiv be required to search and produce emails as well), but many of the communications between Mr. Vigier and Mr. Pascal are entirely personal in nature and reflect their longtime friendship.

WEST/298937137

| | |
|---|---|
| Dated: June 23, 2022 | Respectfully submitted, |

/s/ *John M. Guaragna*
John M. Guaragna
Texas Bar No. 24043308
Zachary Loney *(Pro Hac Vice)*
Texas Bar No. 24092714
**DLA PIPER LLP (US)**
303 Colorado, Suite 3000
Austin, TX 78701
Telephone: (512) 457-7000
Facsimile: (512) 457-7001
john.guaragna@us.dlapiper.com

Mark D. Fowler *(Pro Hac Vice)*
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, California 94303-2214
Telephone: (650) 833-2000
Facsimile: (650) 833-2001

Sean C. Cunningham (*Pro Hac Vice*)
CA Bar No. 98895
Erin Gibson (*Pro Hac Vice*)
CA Bar No. 229305
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone: 619.699.2700
Fax: 619.699.2701
sean.cunningham@dlapiper.com
erin.gibson@dlapiper.com

Paul Steadman (*Pro Hac Vice*)
Stephanie Lim (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
444 West Lake Street, Ste. 900
Chicago, IL 60606
Telephone: 312.368.4000

J. Stephen Ravel
State Bar No. 16584975
**KELLY HART & HALLMAN LLP**
303 Colorado, Suite 2000
Austin, TX 78701

11

▋

        Telephone:  512.495.6329
        Facsimile:  512.495.6401
        steve.ravel@kellyhart.com

*Attorneys for Defendant Apple Inc.*

12

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 23rd day of June 2022, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document by electronic mail.

*/s/ John M. Guaragna*
John M. Guaragna