**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **FINTIV, INC.,**<br>            *Plaintiff,*<br><br>     *v.*<br><br>**APPLE INC.,**<br>            *Defendant.* | **1:21-CV-896-ADA**<br><br>PUBLIC VERSION |

### ORDER GRANTING MOTION
### FOR SUMMARY JUDGMENT [ECF No. 270]

Before the Court is Defendant Apple Inc.'s ("Apple") Motion for Summary Judgment of Non-Infringement. ECF No. 270. Plaintiff Fintiv, Inc. ("Fintiv") filed a Response. ECF No. 300. Apple then replied. ECF No. 348. After originally denying the motion, the Court heard further oral argument on the Motion on June 13, 2023. ECF Nos. 465–66. At the hearing, the Court granted Apple's Motion and vacated its prior decision. This opinion memorializes that ruling.

### I. BACKGROUND

On December 21, 2018, Fintiv filed its complaint alleging infringement of U.S. Patent No. 8,843,125 ("the '125 patent"). ECF No. 1 ¶ 3. Fintiv alleges Apple infringes independent claims 11, 18, and 23 and dependent claims 13, 14, 20, 24, and 25 ("asserted claims"). ECF No. 270-2 ("Shamos Report") ¶ 2. All the asserted claims relate generally to "card provisioning." ECF No. 270-3 ("Shamos Depo.") at 31:21–24; ECF No. 273-1 ("'125 patent") claims 11, 18, 23. Card provisioning is a process whereby a user "load[s] data concerning a payment instrument, such as a credit card, onto a mobile device for the purposes of making payment transactions." Shamos Report ¶ 71. Independent claim 11 recites a method for card provisioning, specifically a "method for provisioning a contactless card applet in a mobile device comprising a mobile wallet application." Independent claim 18 recites a system for card provisioning, specifically a "wallet

1

management system (WMS) in a non-transitory storage medium to store and manage mobile wallet account information." Independent claim 23 recites a "mobile device" for card provisioning. '125 patent, claims 11, 18, 23.

Fintiv accuses each of the Apple iPhone, Watch, iPad, and Mac products of infringing at least one claim of the '125 patent. Shamos Report ¶¶ 102–03. Every asserted claim recites a "widget." Claim 11 requires "retrieving a widget . . . corresponding to a contactless card applet" and "provisioning the widget." Claim 18 requires "a widget management component configured to store and to manage widgets" and "a rule engine configured to filter a widget." Claim 23 requires "a mobile wallet application configured to store a widget" and "an over-the-air (OTA) proxy configured to provision . . . a widget." The Court construed "widget" to have its plain-and-ordinary meaning, where the plain-and-ordinary meaning is "software that is either an application or works with an application, and which may have a user interface." ECF No. 86 at 17, 34. The Court also ruled that "a POSITA would not understand that a widget is a stand-alone application, but rather as code, e.g., a 'plug-in,' that runs within an application." *Id.* at 16.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014). A material fact will have a reasonable likelihood to affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As such, the burden of demonstrating a lack of a genuine dispute of material fact lies with the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A court must view the movant's evidence and all factual inferences from such evidence in a light most favorable to the party opposing summary judgment. *Impossible Elecs. Techniques v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). Accordingly, the fact that the court believes that the non-moving party will be unsuccessful at trial is an insufficient reason to grant summary judgment in favor of the moving party. *See Jones v. Geophysical Co.*, 669 F.2d 280, 283 (5th Cir. 1982). Yet, "[w]hen opposing parties tell two different stories, but one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

Once the court determines that the movant has presented sufficient evidence that no genuine dispute of material fact exists, the burden of production shifts to the party opposing summary judgment. *Matsushita*, 475 U.S. at 586. The non-moving party must demonstrate a genuinely disputed fact by citing to parts of materials in the record, such as affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials; or by showing that the materials cited by the movant do not establish the absence of a genuine dispute. FED. R. CIV. P. 56(c)(1)(A)–(B). "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995).

### III. DISCUSSION

Apple moves for summary judgment of non-infringement of the '125 patent on four independent grounds. One of Apple's grounds is that Fintiv and its technical expert, Dr. Michael Shamos, identified no software in the accused products that constitutes a "widget" under the Court's construction of that term—a requirement of all asserted claims. As explained below, the Court finds that the record is devoid of evidence that the accused products practice the "widget" limitation under the Court's construction. Because the Court finds that Apple has met its burden

on this ground, the Court need not address the other three grounds. Apple has therefore established that there is no genuine dispute of material fact that it does not practice the asserted claims, and it is entitled to summary judgment as a matter of law.

### A.      Apple's Position

Apple contends that it is entitled to summary judgment of noninfringement as to all asserted claims because (1) Fintiv identified no software code in the accused products that meets the "widget" limitations of the asserted claims, and (2) undisputed facts confirm the accused products do not use and are not configured to use a "widget." ECF No. 270 at 12–13. ***First***, Apple argues that Fintiv's expert Dr. Shamos identified no Apple software code that constitutes a "widget" as construed by the Court. *Id.* at 14. Indeed, Apple points to Dr. Shamos's deposition testimony that confirms this argument:

> Q. So do we agree that your report does not cite the -- or identify the software that is the widget in the accused iPhone device?
> A. Yeah. I think it -- I think it doesn't identify the source code of the widget.

*Id.* (citing Shamos Depo. at 73:12–74:5 (emphasis added)). After citing several occasions in Dr. Shamos's deposition testimony establishing there is no source code that makes up the widget in the accused devices, Apple reiterates that Dr. Shamos confirmed under oath that "there is nowhere in [his] report that cites the source code that makes up the widget for any of the accused devices." *See id.* at 15 (citing Shamos Depo. at 75:14–20).

***Second***, Apple asserts that Fintiv also failed to present evidence that the accused products practice other "widget"-related limitations of the asserted claims. *Id.* For example, asserted claim 11 requires "retrieving a widget." Dr. Shamos agreed that during card provisioning a widget must be retrieved from an Apple server to an accused device, but Apple argues he could not identify any widget retrieved from any Apple server. *Id.* (citing Shamos Depo. at 56:23–25). And asserted claim 18 requires "a widget management component configured to store and to manage widgets,"

but Apple contends that Dr. Shamos could not identify which server allegedly stores the claimed

"widget," nor does he know which component is responsible for such storage. *Id.* at 16.

### B. Fintiv And Its Expert Failed To Identify The Claimed "Widget" In The Accused Products.

Fintiv and Dr. Shamos failed to identify the claimed widget in the accused products. In Dr.

Shamos' expert report, only one paragraph discusses the "widget" limitation and contains citations

to Apple's source code—paragraph 309. Shamos Report ¶ 309. But when asked at his deposition,

Dr. Shamos conceded that none of the source code cited in that paragraph is the claimed "widget":

> Q. So the software that you're talking about in Paragraph 309 -- that is the widget,
> is that the software that's cited in Paragraph 309?
> A. I don't think so.

Shamos Depo. at 53:11–14. When Dr. Shamos was asked about each of the source code files cited

in paragraph 309 individually, he confirmed that none of those files is a "widget." *Id.* at 61:21–23

(███████████████ not the widget); 62:11–12 ("█████ alone can't be the widget"); 66:17–

20 ("I can't tell" if █████ is the widget); 69:20–24 ("not ready to say" █████ is the widget);

70:11–12 (███████████████ not the widget); 70:16–22

(████████████████████ and ████████████████ not the

widget); 71:14–17 (██████████████ not the widget); 71:18–24

(████████████ not the widget); 71:25–72:5 (████████████████

██████████ not the widget). As explained above, Dr. Shamos also confirmed that

none of the software files cited in other parts of his report constitutes a "widget":

> Q. But if we did the same exercise we just spent the last 30 minutes doing, we
> would find that there is <u>nowhere in your report that cites the source code that makes
> up the widget for any of the accused devices</u>. Is that right?
> A. That's right.

*Id.* at 75:14–20 (emphasis added).

Fintiv's opposition confirms it has no evidence of a "widget" in the accused products; that is, the accused products contain no "software that is either an application or works with an application, and which may have a user interface." *See* ECF No. 86 at 17, 34. Fintiv first responds that Apple is misreading the construction of "widget" to require "software code" because the word "code" is not the Court's construction of "widget" and source code is not the only way Fintiv can prove Apple's infringement. *See* ECF No. 300 at 9–10. Not so. Fintiv cites only two cases in support of its arguments (*see id.* at 10), but neither case applies here. In *Tarkus Imaging Inc. v. Adobe Sys.*, Case No. 10-63-LPS, 2012 WL 2175788 (D. Del. June 14, 2012), the court denied summary judgment of noninfringement because the court was "not persuaded" by the fact that "Tarkus's expert has not identified specifically infringing source code." *Id.* at *3. But unlike Dr. Shamos, the plaintiff's expert in *Tarkus* relied on "testimony from a Canon Rule 30(b)(6) witness on source code [and] the expert report of William Elswick, an expert for Tarkus who personally reviewed the source code." *Id.* at *3 n.2. Here, Dr. Shamos cites no deposition testimony nor any expert who "personally reviewed" the Apple source code to support his speculation that there must be a "widget" in the products.[1] Critically, Apple is not misconstruing the court's construction of "widget" to require source code; Apple is showing the complete devoid of evidence that Dr. Shamos presented in his expert report to prove infringement.

---

[1] *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 847–48 (Fed. Cir. 2010), also does not support Fintiv. Contrary to Fintiv's misleading parenthetical ("affirming jury finding of infringement despite no source code available to be presented," ECF No. 300 at 10), the lack of source code related to invalidity, not infringement. The prior art source code had been destroyed years before litigation began, so the dispute "turned largely on the credibility of [the prior art's] creators." *Id.* at 846. The court affirmed the jury's finding of validity because "the jury was free to disbelieve Microsoft's expert … and credit i4i's expert, who opined that it was impossible to know whether the claim limitation was met without looking at S4's source code." *Id.* at 848 (emphasis added). Here, Dr. Shamos had Apple's source code, but still found no "widget."

Fintiv then contends that it has proffered sufficient evidence (source code and non-source code) to defeat Apple's Motion. *See* ECF No. 300 at 9. But Fintiv's opposition never identifies what "software" or "software code" comprises the claimed "widget" in the accused products. *See* ECF No. 300 at 9–23. Fintiv instead points to multiple things that are not the claimed "widget." For instance, Fintiv claims that "Apple's own technical documents reference 'widgets' and 'widget' in connection with *other features*." *Id.* at 11–12 (emphasis added, pointing to Home Screen widgets); *see also id.* at 16 ("Apple has marketed other features as 'widgets.'"). The Court finds that those "other features" have nothing to do with provisioning in Apple Wallet or Fintiv's infringement claims. Fintiv also claims that Apple servers allegedly "build widget assets," but Fintiv does not say what those "assets" purportedly are. *Id.* at 13. Fintiv also speculates that an "underlying file that produces the image of a card on the screen ***can*** in fact have executable code" (*id.* at 21, emphasis added), but speculation is not a substitute for evidence. And Fintiv points to a source code module, ███████████████████████ (*id.* at 18), that "has no purpose and is not used on the Mac," but never says that module is the claimed "widget"—because it is not. ECF No. 270-6 ("Diederich Depo.") at 18:4–7; 114:17–25.

Fintiv also points to Dr. Shamos's report at paragraphs 359–60. ECF No. 300 at 13. There, Dr. Shamos relies on the following three screenshots to show that "the widget (providing a user interface) is also provisioned (made available for use)." *Id.*



Shamos Report ¶¶ 359–60. But neither Dr. Shamos nor Fintiv can identify specifically what in these screenshots is the claimed "widget." *See id.* Dr. Shamos merely states that "[e]ach screenshot below (showing the virtual card image for the Visa card) presents a software (with a user interface) that is made available to the user for selecting, via its user interface, among the available ones to, for example, view the card's details or perform transactions." *Id.* ¶ 359. This is mere speculation and is insufficient to establish a genuine dispute of material fact that the accused products infringe the "widget" limitation.

Fintiv's opposition relies on source code modules that its own expert testified under oath are not the claimed "widget." *See* ECF No. 300 at 15 ("The foregoing source code modules of Apple's severs are used to create widgets that are stored in Apple's servers."). Dr. Shamos was asked about each of the cited source code modules, and he confirmed under oath that none of them is the accused "widget." *See* Shamos Depo. at 61:21–23 (████████████████ is not the widget); 70:11–12 (███████████████ is not the widget); *see also id.* at 53:11–14; 62:11–12; 66:17–20; 69:20–24; 70:16–22; 71:14–17; 71:18–24; 71:25–72:5 (each of the source code files

cited in Shamos Report ¶ 309 is not the claimed widget). As the file names reveal, Fintiv is pointing to passes, implying they might be "created" as the "widget." *See* ECF No. 300 at 15, 18. But Dr. Shamos also confirmed that no matter what creates them, passes are not the widget. Shamos Depo. at 62:11–12; 66:17–20; 69:20–24. Thus, nowhere does Fintiv's opposition state that "the 'widget' in the accused product is X," where X is an identifiable piece of software, as required by the Court's construction.

### C.   Dr. Shamos' Speculation About Nonexistent "Widgets" In The Accused Products Is Not Enough To Survive Summary Judgment.

Faced with its failure to identify software that constitutes the accused "widget," Fintiv cites Dr. Shamos' speculation that there must be a widget somewhere in the accused products, even though he failed to identify it in his expert report. *Compare* ECF No. 300 at 9 ("And--are you prepared to testify at trial that there is a widget in the accused Apple devices that infringes the claims of the '125 patent? A. Yes.") *with* Shamos Depo. at 73:12–74:5 (agreeing that his report fails to identify the source code or software that is the accused widget). But under settled Federal Circuit law, "the non-movant can't defeat summary judgment with conclusory allegations, unsupported assertions, or only a scintilla of evidence." *Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1128 (Fed. Cir. 2021) (citing *Batiste v. Lewis*, 976 F.3d 493, 500 (5th Cir. 2020)). Rather, a plaintiff must prove with admissible evidence that the accused products meet each limitation of an asserted claim. *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002). Thus, Fintiv cannot survive summary judgment by citing testimony that its expert is prepared to speculate at trial "that there is a widget in the accused Apple devices." ECF No. 300 at 9. Simply saying, "it must be in there somewhere" is no substitute for the requirement that Fintiv "set forth specific facts showing that there is a genuine issue for trial" with respect to the "widget" limitation. *See* Anderson, 477 U.S. at

256. Fintiv's opposition is devoid of any such "specific facts," because it cannot identify a "widget" in the accused card provisioning process.

On the contrary, Fintiv doubles down on its speculation by arguing that "Apple's own technical documents reference 'widgets' and 'widget' in connection with other features." ECF No. 300 at 11 (emphasis added), citing ECF No. 300 Exs. 13, 14. As Fintiv admits, the cited evidence has nothing to do with Apple Pay or Apple Wallet; rather, the evidence relates to "us[ing] widgets on your Home Screen." *Id.* And not surprisingly, Dr. Shamos cites none of this evidence in his expert report, because it does not bear on infringement.[2] So Fintiv's speculation—without even the support of its expert—that "there must be widgets in Apple Pay because there are widgets in other parts of the product" is even further removed from the "specific facts" Fintiv was required to set forth in opposing the Motion. *Anderson*, 477 U.S. at 256.

## IV. CONCLUSION

Apple has presented sufficient evidence that no genuine dispute of material fact exists on non-infringement. Fintiv then failed to demonstrate a genuinely disputed material fact, or indeed any facts at all, showing that Apple infringes the "widget" limitation present in all asserted claims of the '125 patent. Accordingly, Defendant Apple's Motion for Summary Judgment of Non-Infringement (ECF No. 270) is **GRANTED**.

SIGNED this 21st day of June, 2023.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

---

[2] Fintiv also cites an undated, one-page presentation slide titled "Provisioning: Requirements." ECF No. 300 at 13. Dr. Shamos neither cites nor discusses this document, and it says nothing about "software that is an application or works with an application." The document refers to data that is sent and received, including "required fields for the card to be provisioned," "payment product name," and whether "card supported or not." The Court finds this document is not evidence of the claimed "widget."